# EXHIBIT 1

Troutman Sanders LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia  23462

troutman.com



**Ethan G. Ostroff**
ethan.ostroff@troutman.com

December 10, 2019

Travis W. Cohron
Clark, Quinn, Moses, Scott & Grahn, LLP
320 N. Meridian Street, Suite 1100
Indianapolis, IN 46204
tcohron@clarkquinnlaw.com

**Re:   Purported Notice of Error to PHH Mortgage Corporation Regarding Demona Freeman; Loan No.            2406; 17373 Pinewood Lane Westfield, IN 46074**

Dear Mr. Cohron:

Please consider this letter to be the response of PHH Mortgage Corporation ("PHH") to your correspondence dated October 7, 2019 ("October 7 Letter").  However, please note that this is not an admission that the October 7 Letter complies with the requirements of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.* ("RESPA") or that the October 7 Letter constitutes a Qualified Written Request ("QWR") under RESPA as a matter of law.

Before addressing the specific sections of the October 7 Letter, it is necessary to point out that the October 7 Letter is generally confusing and unclear. The October 7 Letter provides no detail regarding any specific error made by PHH in connection with servicing the loan identified by the loan number ending in 2406 (the "Loan").  Indeed, the October 7 Letter is muddled with blanket statements that do not relate to the section entitled "Requests for Information and Actions Necessary to Correct Errors," which makes it difficult to respond to your purported Notice of Error.

For example, while you state multiple times that PHH has failed to accept and apply payments to the Loan, you have provided no information about what payments were not accepted or properly applied.  Instead, you offer contradictory statements that Ms. Freeman has either made all of her monthly payments and is not in default, or if she is in default, PHH did not provide her with proper loss mitigation information.  As described further below, both assertions are inaccurate.  Thus, your demands for an acknowledgement in writing that the Loan is current and that PHH "[c]ease holding or otherwise placing Ms. Freeman's monthly payments in Suspense," lack any factual basis or support.

Additionally, while the October 7 Letter does not claim that PHH is reporting the details of Plaintiff's Loan to the consumer reporting agencies or allege any error in connection with such reporting, it inexplicably demands that PHH "[p]rovide a copy of, or print out of, all credit reporting data and/or e-Oscar AUD's provided to or received from any credit reporting agency. . . ."

VIA
December 10, 2019
Page 2



(October 7 Letter, p. 4).  Credit reporting data is not a proper subject of a Qualified Written Request under RESPA as it does not relate to "servicing" or any servicing "error" as those terms are defined under RESPA.  As such, this purported request is nothing more than an improper "discovery-style" request that does not constitute a valid Qualified Written Request. *See Ekundayo v. PNC Bank, Nat'l Assoc.*, No. A-14-CA-142-SS, 2014 WL 5092625, at *5 (W.D. Texas 2014) (determining that eleven-page letter posing discovery-style document demands and interrogatories was not a QWR under RESPA).  Nonetheless, because you have not alleged any error with PHH's credit reporting, your demand of PHH to "[c]ause all credit reporting agencies to change their reporting on Ms. Freeman's Loan to show it as being current from March 1, 2015 to date," does not make sense.

Despite the confusing, contradictory, and improper nature of your "Notice of Error," we will respond as follows on behalf of PHH with respect to your allegations concerning the Loan.

**Section III (1) –** With regard to your inquiry concerning the September 24, 2019 "Notice of Intention to Foreclose," you allege that "Ms. Freeman is not in default nor does she owe the amount PHH is seeking to collect." (October 7 Letter, p. 3).  PHH has conducted a reasonable investigation and determined that your allegation is without merit and no error has occurred.

Specifically, the last payment received on the Loan was August 13, 2019 in an amount of $933.63, which was applied to the next payment due date of August 1, 2018.  Prior to that payment, the last payment received was on May 4, 2018 in the amount of $690.91, which was applied to the payment due date of July 1, 2018.  Between May 5, 2018 and August 12, 2019, PHH has no record of Ms. Freeman making any payments towards the Loan.  Additionally, PHH has no record of any payments made since the August 13, 2019 payment. Thus, as the last payment was applied to the August 1, 2018 due date, the Loan is due for the September 1, 2018 payment and Ms. Freeman was behind a total of 13 payments as of September 24, 2019 as stated in the "Notice of Intention to Foreclose."

Additionally, your allegation that the "amount due is the byproduct of Ocwen misapplying payments during and after Ms. Freeman's bankruptcy proceedings then failing to correct those misapplications before transferring its servicing records to PHH," is without merit.  *Id*.  The Loan was current and Ms. Freeman was ahead on her payments as of May 4, 2018.  However, as described above, since May 4, 2018, she has only made one payment.  Thus, the delinquency on the Loan is not connected to Ms. Freeman's Bankruptcy case, Ocwen's servicing of the Loan, or PHH's servicing of the Loan, but instead to her failure to make payments.  To that end, your contention that "Ms. Freeman continues to make timely and adequately [sic] payments as required" is without merit.

Finally, you contend that "even if [Ms. Freeman] were in default, this notice was issued without any information about loss mitigation options being provided to her beforehand." *Id*.  This allegation is without merit. 12 C.F.R. § 1024.41(f) and (j) do not require that loss mitigation information be provided before a notice of intention to foreclose is sent to a borrower.  Ms.

40774676

VIA
December 10, 2019
Page 3



Freeman was provided with loss mitigation options in the September 24, 2019 "Notice of Intention to Foreclose," and may still avail herself of those options.

Pursuant to 12 C.F.R. § 1024.35(e)(4), you may request a copy of the documents used to reach the determination that no error has occurred with respect to the allegations in Section III(1) of the October 7 Letter. Please make any request for such documents to me directly.

**Section III (2) –** In regard to this Section, you claim that "PHH has failed to promptly credit payments as required by Reg. Z, 12 C.F.R. § 1026.36(c)(1) (TILA) and/or 15 U.S.C. § 1639f." (October 7 Letter, p. 3). To begin with, the October 7 Letter lacks sufficient information to fully address this allegation. Specifically, you do not specify which payments PHH has allegedly failed to properly credit or has placed in "Suspense for extended periods of time." Nonetheless, PHH has conducted a reasonable investigation and determined no error occurred.

Ms. Freeman has only made one payment since servicing of the Loan transferred to PHH. That single payment, made on August 13, 2019, was applied to the Loan in accordance with the mortgage. Additionally, there are currently no funds being held in suspense on the Loan. Moreover, as is plainly stated in the September 24, 2019 Notice of Intention to Foreclose, there were no accumulated late charges assessed against Ms. Freeman as of the date of that letter.

Pursuant to 12 C.F.R. § 1024.35(e)(4), you may request a copy of the documents used to reach the determination that no error has occurred with respect to the allegations in Section III(2) of the October 7 Letter. Please make any request for such documents to me directly.

**Section III (3) –** In regard to this Section, you claim that "PHH has failed to apply an accepted payment to principal, interest, escrow, or other charges under the terms of the mortgage loan and applicable law." (October 7 Letter, p. 3). PHH has conducted a reasonable investigation and determined no error occurred.

As explained above, Ms. Freeman has only made one payment since the Loan has been serviced by PHH. That payment was applied to the Loan in accordance with the terms of the mortgage.

Your conclusion that the "only conceivable way [PHH] could conclude Freeman is in default and owes $11,022.43" is if payments are not being applied under the terms of the mortgage is premised on the idea that Ms. Freeman has made timely payments towards the Loan. This is incorrect. As described above, Ms. Freeman has not made timely payments, and was behind 13 monthly payments as of September 24, 2019.

Pursuant to 12 C.F.R. § 1024.35(e)(4), you may request a copy of the documents used to reach the determination that no error has occurred with respect to the allegations in Section III(2) of the October 7 Letter. Please make any request for such documents to me directly.

40774676



**Section IV (A)** asks PHH to "[a]cknowledge in writing to Ms. Freeman that her Loan is current with no outstanding amounts." PHH cannot accommodate this request because, as described above, Ms. Freeman's Loan is not current and does have outstanding amounts due.

**Section IV (B)** asks PHH to "[a]cknowledge receipt of this NOE No. 5 within five (5) business days required by 12 CFR § 1024.35." An acknowledgment of the October 7 Letter was sent to you by e-mail and Fedex (Trk # 776607681690) on October 8, 2019.

**Section IV (C)** asks PHH to "[p]rovide a copy of, or print out of, all credit reporting data and/or e-Oscar AUD's provided to or received from any credit reporting agency with regard to the loan identified herein including but not limited to the Global Events Management (GEM) screen shot from MSP." This is an improper Request for Information as credit reporting does not concern information related to "servicing" as that term is defined under 12 C.F.R. § 1024.2. Nonetheless, no information has been reported to the consumer reporting agencies by PHH with respect to this Loan.

**Section IV (D)** requests that "[s]hould PHH reach a determination that 'no error occurred,' please provide all documents and information relied upon." This request was improperly made in your purported Notice of Error as it seeks to require PHH to provide documents prior to determining and communicating to you that no error has occurred. Moreover, your request was made pursuant to "12 C.F.R. § 1024.36(e)(4)" which does not govern the production of documents used to determine no error occurred. As stated above, you may request documents used to reach the above conclusions that no error occurred from me directly upon receipt of this letter.

**Section IV (E)** asks PHH to "[c]ease holding or otherwise placing Ms. Freeman's monthly payments in Suspense." As described above, no payments are being held in suspense by PHH.

**Section IV (F)** asks PHH to "[c]ause all credit reporting agencies to change their reporting on Ms. Freeman's Loan to show it as being current from March 1, 2015 to date." This is an improper request as it does not relate to "servicing" as that term is defined by RESPA. The Request is also improper as PHH has not been servicing the loan since March 1, 2015, and so there is no ability for it to report the Loan – as serviced by PHH – from the date of March 1, 2015 through the present. Finally, there is no factual basis to report the Loan as being current from March 1, 2015 to date. As described above, the Loan is not current.

In providing the above response, PHH is not limiting or waiving any rights or remedies it may now or hereafter have, whether arising under the Loan documents, at law or in equity, all of which rights and remedies are expressly reserved.

Sincerely,

*/s/ Ethan G. Ostroff*
Ethan G. Ostroff



**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.