UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
Indianapolis Division

| | |
|---|---|
| In re: ) | |
| ) | |
| **DEMONA FREEMAN**, ) | |
| ) | Case No. 12-04713-JJG-13 |
| *Debtor*. ) | |
| ) | |

_____

| | |
|---|---|
| ) | |
| **DEMONA FREEMAN**, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | Adv. Pro. No. 21-50006 |
| ) | |
| **PHH MORTGAGE f/k/a OCWEN LOAN** ) | |
| **SERVICING, LLC.**, and **OCWEN FINANCIAL** ) | |
| **CORPORATION**, ) | |
| ) | |
| *Defendants*. ) | |

## PLAINTIFF'S PRETRIAL REPORT

Pursuant to the Court's Order dated February 19, 2021, the parties were ordered to filed a Joint Pretrial Report. Defendants have opted to file their own pretrial report; therefore, Plaintiff files her Pretrial Report, as follows:

1. This Court has both personal and subject matter jurisdiction pursuant to 28 U.S.C. §§ 157(b)(2) and 1334.

2. This matter entails a core proceeding and therefore this Court has jurisdiction to enter a final order with respect to those issues.

3. Plaintiff consents to the entry of final orders or judgment by the Bankruptcy Judge, regardless of whether the proceeding is core or non-core.

1

4. Freeman's position is that there is no right to a jury trial in this case unless the Court determines that criminal contempt may be appropriate. If so, then the Court is empowered to empanel a jury and have the jury determine both guilt and the monetary penalty to be imposed.

### Plaintiff's Statement of Facts at Issue

1. Demona Freeman ("Freeman") is the debtor in this underlying bankruptcy case and the plaintiff in this adversary proceeding

2. PHH Mortgage is a successor by merger to Ocwen Loan Servicing, a subsidiary of Ocwen Financial Corporation ("Ocwen").

3. At all times relevant, Ocwen acted as the authorized agent for servicing, partial assignee of, and mortgage servicer for, Federal Home Loan Mortgage Corporation ("Freddie Mac") with respect to Freeman's mortgage loan account.

4. In 2008, Freeman began encountering financial difficulties as a reverberation of the financial collapse brought on by the mortgage industry.

5. On April 13, 2009, New York Mellon filed a foreclosure action against Freeman in the Hamilton County Superior Court No. 1 (Cause No. 29D01-0904-MF-000484) (the "First Foreclosure Case").

6. Freeman sought to stop the forced sale of her home by filing for Chapter 13 bankruptcy protection on April 23, 2012, in the United States Bankruptcy Court for the Southern District of Indiana (Case No. 12-04713-JKC-13) (the "Bankruptcy Case").

7. Shortly after filing, Freeman proposed a Chapter 13 Plan [Filing No. 2] (the "Chapter 13 Plan"), which was confirmed on April 10, 2013, and later modified by Order pursuant to 11 U.S.C. § 1329 on March 15, 2016.

8. Pursuant to the Chapter 13 Plan, Freeman was to make regular monthly payments of $1,740.00 to the Chapter 13 Trustee, from which Ocwen would receive approximately $1,029.00 per month to maintain the monthly payments it was owed, plus an additional sum to address all arrearage (originally estimated by Freeman to be $15,000.00).

9. Ocwen appeared in the Bankruptcy Case and participated in those proceedings by filing a Proof of Claim (Claim No. 8 dated July 26, 2012) [Claim Filing No. 8-1] on behalf of New York Mellon.

10. The Proof of Claim asserted a secured claim in the amount of $133,064.46 and an arrearage claim of $22,668.03, which included: (a) escrow charges of $6,649.43; (b) a transferred fee balance of $2,328.05; (c) property valuation fees of $121.00 (listed twice for a total of $242.00); (d) foreclosure fees of $225.00; (e) foreclosure costs of $695.36; and (f) a proof of claim fee of $150.00.

11. On September 13, 2012, the United States Trustee filed an Objection to Claim [Filing No. 47], detailing approximately three pages of errors in Ocwen's Proof of Claim, including unsubstantiated, and thus objectionable, charges contained within.

12. Within the Objection to Claim, the United States Trustee also states: "Further, based on a review of claims filed by Ocwen Loan Servicing, LLC. in the Southern District of Indiana, the United States Trustee believes this failure occurs in nearly every proof of claim filed by Ocwen and is systematic in nature."

13. Ocwen did not respond to the Objection to Claim.

14. On October 26, 2012, the Bankruptcy Court entered the Order on United States Trustee's Objection to Claim Number 8 Filed by Ocwen Loan Servicing, LLC. [Filing No. 53],

3

disallowing the objected to, and unsubstantiated, fees, expenses, and charges totaling $10,289.84 as well as any fees for preparation of the Proof of Claim or amendments thereto.

15. The Order allowed the balance of Ocwen's Proof of Claim, which was an arrearage in the amount of $12,378.10.

16. On November 13, 2013, Ocwen filed its Motion to Reconsider and Motion for Leave to File an Amended Claim ("Motion to Reconsider") [Filing No. 57].

17. On December 5, 2012, the United States Trustee filed an Objection to the Motion to Reconsider [Filing No. 59], highlighting Ocwen's failure to respond to the original Objection to Claim let alone meet the requisite cause to permit the filing of an amended claim.

18. On January 14, 2013, the Court conducted oral argument for and against the Motion to Reconsider.

19. Ocwen and the United States Trustee both appeared by counsel.

20. On January 22, 2013, the Bankruptcy Court entered an Order [Filing No. 69], denying Ocwen's Motion to Reconsider.

21. On February 22, 2013, Ocwen filed a Notice of Postpetition Fees, Expenses and Charges under Claim Number 8 on the Claims Register ("Fee Notice") to supplement its original Proof of Claim, a portion of which had been disallowed.

22. In the Fee Notice, Ocwen listed a "Bankruptcy Fee," dated January 17, 2013, in the amount of $300.00.

23. Attached to the Fee Notice was an invoice that provided further detail regarding the "Bankruptcy Fee," indicating the fee (which was to be assessed to Freeman's account) as related to a "Response to Objection to Claim – (Rec from Brwr)."

24. Ocwen had not filed a response to the Trustee's Objection to Claim.

4

25.     In response to the Fee Notice, the United States Trustee filed a Motion For Determination of Post-Petition Fees, Expenses, or Charges [Filing No. 80] ("Motion For Determination"), stating: "12. A review of the case docket indicates that [Ocwen] failed to respond to the Claim Objection. Thus any fees for a Response to Objection to Proof of Claim are improper and should be disallowed entirely."

26.     Ocwen failed to file a response to the Trustee's Motion for Determination.

27.     The Bankruptcy Court set the Motion for Determination for hearing on April 2, 2013.

28.     Proper notice of the hearing was issued to Ocwen.

29.     Ocwen failed to appear at the hearing on April 2, 2013.

30.     On April 8, 2013, the Bankruptcy Court entered its Order Granting the Trustee's Motion for Determination [Filing No. 85], disallowing the $300.00 fee described above and stating the following: "All fees relating to the Proof of Claim filed by [Ocwen] in this case ("Proof of Claim"), amendments to the Proof of Claim, or any litigation relation to the Proof of Claim or future matters that relate to the United States Trustee's litigation in this case, including the Motion for Determination, are hereby disallowed and may not be charged to Debtor's mortgage account."

31.     On April 12, 2017, the Chapter 13 Trustee filed a Notice of Final Cure Payment [Filing No. 109] pursuant to FRBP § 3002.1(f), stating the amount to cure the prepetition default ($12,378.19 in arrearage) had been paid in full and that Freeman had completed all payments required under the plan.

32. On April 24, 2017, Ocwen filed a Response to Notice of Final Cure Payment under Claim Number 8 on the Claims Register "[agreeing] that the Debtor(s) have paid in full the amount required to cure the prepetition default on the creditor's claim."

33. Within the same document, under the penalties for perjury, Ocwen affirmed Freeman was current with all post-petition payments consistent with §1322(b)(5) of the Bankruptcy Code including all fees, charges, expenses, escrow, and costs.

34. Per the Response to Notice of Final Cure Payment, Freeman was to make her next post-petition payment on May 1, 2017.

35. Per the Response to Notice of Final Cure Payment, Freeman was henceforth current on her mortgage obligation and was to continue making her regular monthly installment directly to Ocwen beginning on May 1, 2017.

36. On or about April 26, 2017, Ocwen rejected Freeman's attempt to make her May 2017 payment.

37. Ocwen told Freeman her mortgage loan account was eight months delinquent.

38. Ocwen later accepted the May 2017 payment.

39. Freeman commenced making timely and adequate monthly installment payments on the Loan to Ocwen by a series of ACH debits.

40. On November 21, 2017, Freeman obtained an Order of Discharge.

41. Per the Chapter 13 Plan, the Order of Discharge, and the Response to Notice of Final Cure Payment, Freeman's mortgage was to be reinstated according to the original terms.

42. Per the Chapter 13 Plan, Orders of the Court, the Order of Discharge, and the Response to Notice of Final Cure Payment, any right of Ocwen, as mortgage servicer and agent

6

of the owner of the mortgage loan account, to recover any amounts alleged to have arisen prior to her filing for bankruptcy was thereby extinguished.

43. On or about December 19, 2017, Freeman received a call from an Ocwen representative alleging Freeman was nine months delinquent on her mortgage payments.

44. On or about February 8, 2018, Freeman received another call from an Ocwen representative alleging Freeman was approximately $8,000.00 behind on her mortgage payments.

45. Freeman made all payments due during her Chapter 13 case and all direct mortgage payments due after her plan completion and bankruptcy discharge and was contractually current on the Loan.

46. On February 21, 2018, despite Freeman being contractually current on the Loan, making all required direct payments since completion of her plan payments, and having received the Court's Order of Discharge, New York Mellon, filed a Notice of Relief from Stay and Abandonment in the First Foreclosure Case ("Notice of Relief from Stay").

47. The decision to file the Notice of Relief from Stay was, at least in part, based upon information provided to New York Mellon from Ocwen.

48. In the Notice of Relief from Stay, New York Mellon states: "Further, the property at issue has been abandoned from the bankruptcy estate under 11 U.S.C. § 554."

49. As this Court's docket clearly shows, Freeman's home, referenced in the Notice of Relief from Stay, had not been abandoned from the bankruptcy estate.

50. The filing of the Notice of Relief from Stay had the effect of restarting the First Foreclosure Case, *post-discharge,* and after the loan was brought current, and there was no default upon which a foreclosure could be based.

51. On March 6, 2018, following receipt of one or more messages from Freeman's bankruptcy counsel, a senior paralegal with counsel for New York Mellon in the First Foreclosure Case stated: "After review, the attorney has determined that our foreclosure case should be closed, as you said."

52. On May 2, 2018, New York Mellon, by counsel, filed a Motion to Vacate Judgment and To Dismiss Case Without Prejudice.

53. On May 5, 2018, the First Foreclosure Case was dismissed.

54. As or May 2018, Freeman had made all payments due and was contractually current on the Loan.

55. In or about May of 2018, Ocwen stopped accepting Freeman's payments on the Loan.

56. On or about May 30, 2018, Freeman received a thirty-day pre-foreclosure notice letter by certified mail.

57. But for Ocwen's refusal to accept her May payment, Freeman was contractually current on the Loan.

58. Sometime in June of 2018, Freeman obtained an exact reproduction of the life of loan mortgage transactional history ("Life of Loan History") for the Loan from the system of record used by Ocwen.

59. The Life of Loan History reflects the current mortgage balance, the date of receipt and application of all payments, the date of assessment for any late fees or charges, and the recording of any corporate advances for any legal fees or charges, including without limitation property inspection fees, legal fees, escrow fees, processing fees and any other collateral charges.

60. The Life of Loan History reflects that, during Freeman's ongoing Chapter 13 Bankruptcy Case, Ocwen assessed fees and expenses, some of which were applied to Freeman's mortgage account as a debit and others that were applied and then reversed.

61. Ocwen did not provide notice of the charging of these fees and expenses to Freeman's account as required by FRBP § 3002.1.

62. Those fees and expenses applied to Freeman's mortgage (i.e., fees and expenses paid by Ocwen to Ocwen from funds that should have been applied to principal, interest, or escrow) include $6,649.43 in escrow charges specifically disallowed in the Bankruptcy Case by this Court's October 26, 2012 at Doc. 53.

63. In addition, the Life of Loan History reflects that during Freeman's Bankruptcy Case and thereafter, Ocwen maintained a large balance of unapplied funds in a suspense account.

64. Ocwen's improper and illegal retention of these unapplied funds in a suspense account resulted in automatic charges to Freeman's account of default related fees and additional interest in violation of the Bankruptcy Code and this Court's orders.

65. At all relevant times, Freeman continued to make timely and adequate payments each month as obligated.

66. The Life of Loan History reflects that Ocwen's unlawful conduct included, or otherwise caused, a manufactured negative escrow balance to exist almost continuously throughout Freeman's Bankruptcy Case and thereafter.

67. An escrow account is a form of trust account maintained for the purpose of paying taxes and insurance on a mortgage loan account.

9

68. Ocwen had no right or authority to debit funds in this manner or outside the requirements of the laws governing escrow accounts and the agreement of the parties evidenced in the mortgage and promissory note governing the loan.

69. In addition, pursuant to the Loan, if the amount withheld in the escrow account for insurance and taxes were insufficient, Ocwen was required to notify Freeman of the shortage pursuant to the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq*.

70. Ocwen failed to provide Freeman with notice of the shortage or explanation for the activities underpinning the negative escrow balances set forth above.

71. By maintaining a negative escrow balance, Ocwen caused Freeman to incur fees, penalties and/or interest that she would not have otherwise.

72. In addition, by maintaining a negative escrow balance following the conclusion of the Bankruptcy Case, Ocwen violated the discharge injunction ordered therein and deprived her of the fresh start to which she was entitled.

73. By maintaining a negative escrow balance during the course of the Bankruptcy Case, Ocwen failed to provide notice to the Court of those alleged charges as required by FRBP § 3002.1.

74. On July 5, 2018, Ocwen applied a $20.00 "Property Inspection (Exterior)" fee to Freeman's Mortgage without appropriate cause or necessity.

75. Ocwen continues to apply fees and expenses to Freeman's mortgage entirely without basis.

76. Ocwen continues to withhold insurance funds to which Freeman is legally entitled and desperately needs to repair her roof.

77. Ocwen continues to place default related correspondence upon the doorknob of Freeman's home.

78. Ocwen continues to direct third party servicers to Freeman's home to take pictures normally associated with an event of default.

79. Freeman continues to make timely and adequate payments to Ocwen.

80. Ocwen had conducted an internal investigation of its mortgage servicing failures and had determined many years earlier, that Ocwen was systematically incapable of properly applying payments received on a mortgage loan account in a Chapter 13 bankruptcy proceeding and incapable of properly accounting for monies had and received on the account of debtors in a Chapter 13 bankruptcy case.

81. Ocwen, during its investigation of its mortgage servicing failures, had determined that it was institutionally incapable of properly accounting for monies had and received for escrow accounts on consumer mortgage loan accounts for debtors in a Chapter 13 bankruptcy proceeding.

82. Ocwen had further determined that it was systemically incapable of reconciling consumer escrow accounts for debtors in a Chapter 13 bankruptcy and that Ocwen employees were improperly debiting and crediting amounts into and out of consumer escrow accounts in violation of the laws governing escrow accounts as well as Ocwen's obligations under bankruptcy law and under national mortgage servicing standards.

83. Freeman, the United States Trustee, the Chapter 13 Trustee and this Court had no knowledge of Ocwen's internal investigation.

**Plaintiff's Statement of Issues of Law to be Resolved**

1. Whether there is any fair ground of doubt that Ocwen's conduct violates the discharge injunction.

2. If yes, whether Ocwen's contemptuous conduct harmed Freeman. If yes, what amount should be awarded to compensate Freeman for her injuries and damages.

3. If Ocwen violated the discharge injunction, should the Court impose any sanctions beyond compensating Freeman for her injuries and damages.

Dated: March 30, 2021

*Respectfully submitted,*

*/s/ Nick Wooten*
Nicholas H. Wooten
NICK WOOTEN, LLC
5125 Burnt Pine Drive
Conway, AR 72034
Telephone: (833) 937-6389
nick@nickwooten.com

Travis W. Cohron, No. 29562-30
Oliva A. Hess, No. 36166-49
CLARK, QUINN, MOSES, SCOTT & GRAHN, LLP
320 N. Meridian Street, Suite 1100
Indianapolis, IN 46204
Telephone: (317) 637-1321
tcohron@clarkquinnlaw.com
ohess@clarkquinnlaw.com

*Counsel for Debtor/Plaintiff*

**CERTIFICATE OF SERVICE**

      I hereby certify that on March 30, 2021, I caused a copy of Plaintiff's Pretrial Report to be served, via ECF, on the service list.

                                */s/ Nick Wooten*
                                Nick Wooten

                                *Counsel for Debtor/Plaintiff*