UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
**Indianapolis Division**

| | |
|---|---|
| In re:<br><br>**DEMONA FREEMAN**,<br><br>    *Debtor.* | )<br>)<br>)<br>)  Case No. 12-04713-JJG-13<br>)<br>) |
| **DEMONA FREEMAN**,<br><br>    *Plaintiff*,<br><br>v.<br>**PHH MORTGAGE CORPORATION**<br>**f/k/a OCWEN LOAN SERVICING, LLC.**, and<br>**OCWEN FINANCIAL CORPORATION**,<br><br>    *Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)  Adversary No. 21-50006<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT PHH MORTGAGE CORPORATION'S**
**MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**

Defendant PHH Mortgage Corporation, successor by merger to Ocwen Loan Servicing, LLC ("PHH"),[1] by counsel, pursuant to Federal Rule of Bankruptcy Procedure 7026 and Federal Rule of Civil Procedure 26(c), submits this Memorandum in Support of its Motion for Protective Order, seeking relief regarding certain topics noticed in a 30(b)(6) Notice of Deposition served on PHH.

## I. INTRODUCTION

Despite attempts by the Parties to resolve disputes over the scope and subject matter of Plaintiff's 30(b)(6) deposition topics, Plaintiff insists on pursuing testimony from PHH's corporate

---

[1] This Memorandum refers to PHH as "Ocwen" where the time period at issue predates the merger between PHH and Ocwen Loan Servicing, LLC.  Ocwen is distinct from co-defendant Ocwen Financial Corporation.

1

representative regarding information that is irrelevant to the claims and defenses in this Adversary Proceeding most of which is meant to harass PHH, legal conclusions and/or opinions, privileged and/or protected information, and information regarding co-defendant Ocwen Financial Corporation which is not the subject of Plaintiff's Notice of Deposition. Given Plaintiff's unwillingness to properly limit her 30(b)(6) deposition topics to factual, relevant, non-harassing, and non-privileged/protected information, PHH is left with no choice but to seek relief from the Court.

## II.    BACKGROUND

Plaintiff originally filed a Complaint in the United States District Court for the Southern District of Indiana, *Freeman v. Ocwen Loan Servicing, LLC et al.* (Case No. 1:18-cv-3844), alleging a number of claims in connection with the servicing of her mortgage. Among the claims in her original Complaint were alleged violations of the Bankruptcy Code stemming from her Chapter 13 Bankruptcy. Defendants Ocwen and Bank of New York Mellon filed a Motion to Dismiss, and the Court dismissed most of Plaintiff's claims, including those related to and/or arising from her Chapter 13 Bankruptcy. Following an unsuccessful Motion for Reconsideration or to Certify Interlocutory Appeal, Plaintiff moved to reopen her Chapter 13 Bankruptcy Case and filed an Adversary Proceeding Complaint. (*See* ECF No. 1).

Plaintiff's Complaint in this matter consists of two claims. Count I is for alleged violations of the Discharge Injunction, 11 U.S.C. § 524. Count II is for alleged violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605 *et seq*.

Plaintiff originally sought to take PHH's corporate deposition in April 2022 and provided a list of proposed deposition topics. The Parties met and conferred over the deposition topics, which were subsequently revised by Plaintiff. Due to deadlines in Plaintiff's District Court case

2

and ongoing settlement efforts, the Parties sought and obtained an extension of the deadlines in this matter. The Parties subsequently agreed set PHH's corporate deposition for July 1, 2022. In an effort to ensure that the deposition topics were final and would not be revised, PHH's counsel requested that an Amended Notice of Deposition with the topics be served prior to serving objections and filling a motion for protective order, if necessary. The Amended Notice of Deposition for the July 1, 2022 deposition was finally served on June 29, 2022. *See* June 29, 2022 Correspondence from Travis Cohron and attachments, attached hereto as **Exhibit A**. However, the topic list that was included with the Amended Notice of Deposition was not the topic list that had been prepared following the Parties meet and confer conferences. To his credit, Plaintiff's counsel quickly provided the correct topic list containing the deposition topics as revised following the Parties' meet and confer conference. *See* Second June 29, 2022 Correspond from Travis Cohron, attached hereto as **Exhibit B**; *see also* Exhibit A to Amended Notice of 30(b)(6) Deposition of PHH, attached hereto as **Exhibit C**. Having been provided the Amended Notice of Deposition and confirming there were no changes to Plaintiff's revised topic list, PHH finalized and served objections to those topics.[2] *See* Objections to Pl.'s 30(b)(6) Notice of Deposition, attached hereto as **Exhibit D**. Given that the Parties had already discussed their disagreements over the topics (as revised) and agreed there was an impasse over the objections PHH had over the objections, the undersigned prepared and filed the instant Motion for Protective Order.

---

[2] Counsel for PHH had expressed to Plaintiff's counsel an intention to serve objections and file the instant Motion for Protective Order sooner. However, doing so was premised on receiving an Amended Deposition Notice with the final topic list attached to ensure there would be no further revisions.

3

### III.     LEGAL STANDARD

Fed. R. Civ. P. 26(c)(1)[3] provides that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending." Fed. R. Civ. P. 26(c)(1). "While Rule 30(b)(6) allows for the deposition of an organization, the scope of such discovery is limited by Rule 26 which permits 'discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. . . . Additional limitations are imposed on discovery, including Rule 30(b)(6) depositions, by Rule 26(b)(2)(C)." *Gossar v. Soo Line R. Co.*, No. 3:09-CV-9RLYWGH, 2009 WL 3570335, at *1–2 (S.D. Ind. Oct. 27, 2009). This rule provides that "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive . . . or the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." *Id.* (quoting Fed. R. Civ. Pro. 26(b)(2)(C)). Moreover, the discovery "[r]ules also preclude proponents of discovery from wielding the discovery process as a club by propounding requests compelling the recipient to assume an excessive burden." *Smithkline Beecham Corp. v. Apotex Corp.*, No. 98 C 3952, 2000 WL 116082, at *9 (N.D. Ill. Jan. 24, 2000).

---

[3] Federal Rule of Bankruptcy Procedure 7026 incorporates Federal Rule of Civil Procedure 26. *See* Fed. R. Bankr. P. 7026.

## IV. ARGUMENT

**A. Plaintiff should be Barred from Obtaining Irrelevant Testimony and/or Limited in the Scope of the Testimony she can Seek.**

1. <u>Many of Plaintiff's deposition topics are not limited to the relevant time period in this matter based on the claims at issue</u>.

As explained above, Plaintiff's Adversary Proceeding contains two claims: (1) alleged violations of the Discharge Injunction, and (2) alleged violations of RESPA. *See* Compl. (ECF No. 1). The Order of Discharge that underlies Plaintiff's claims under 11 U.S.C. § 524 was entered on November 21, 2017. *See id*. at ¶ 50. The purported Qualified Written Request that forms the basis for Plaintiff's RESPA claim was dated October 7, 2019. *Id*. at ¶ 212. As a result, the relevant timeframe applicable to Plaintiff's claims begins no earlier than November 21, 2017. Indeed, no claim in this matter concerns conduct – or could impose liability for conduct – occurring before November 21, 2017. Several deposition topics seek information spanning as far back as 2012, or contain no time limitations at all. As explained below, these topics are not properly limited to the time period relevant to Plaintiff's claims and should be so limited by the Court.[4]

***Topic Nos. 8 & 9.*** Topic Nos. 8 & 9 in Plaintiff's Notice of Deposition seek the identity and other information regarding "every person who has had day to day responsibility for the management of Ocwen's entire bankruptcy department" and "every executive who has been charged with overseeing the operations of Ocwen's bankruptcy department," from 2012 until February 2019. *See* <u>Ex. C</u>, ¶ 8 & 9. Plaintiff's claims begin no earlier than November 21, 2017. Thus, it is inexplicable how the identity of Ocwen employees and/or executives spanning back as far as 2012 would be relevant to those claims. Individuals managing or overseeing Ocwen's

---

[4] To be clear, PHH has offered to make a witness available to testify as to the topics discussed below to the extent that testimony is properly limited to the relevant time period applicable to Plaintiff's claims.

5

bankruptcy department between 2012 and November 20, 2017 could not possibly possess any information relevant to whether Ocwen violated the Discharge Injunction with respect to Plaintiff's Account. As a result, to the extent information regarding individuals managing or overseeing Ocwen's bankruptcy department prior to November 21, 2017 is sought, it is irrelevant and therefore impermissible under Rule 26. Accordingly, the Court should limit Topics 8 & 9 to a time period beginning no earlier than November 21, 2017.

*Topic No. 11.* Topic No. 11 seeks testimony regarding "bankruptcy 'flags' or 'stops' that are or were a part of the RealServicing platform with respect to loans where a bankruptcy case is active and where a bankruptcy case has been discharged." *See* Ex. C, ¶ 11. Topic No. 11 contains no time limitation, and therefore necessarily encompasses information that is outside the relevant time period applicable to Plaintiff's claims. The existence of bankruptcy "flags" or "stops," or information related thereto, predating Plaintiff's claims could not have any bearing on those claims. Accordingly, the Court should limit Topic 11 to a time period beginning no earlier than November 21, 2017.

*Topic No. 17.* Topic No. 17 seeks "[a] discussion of Ocwen's actions with respect to Plaintiff's mortgage loan account from the time Mrs. Freeman filed bankruptcy until the present date." *See* Ex. C, ¶ 17. Plaintiff's claims in this Adversary Proceeding do not concern all of Ocwen's actions dating back to 2012, when she filed for Chapter 13 Bankruptcy. Instead, Plaintiff's claims explicitly concern Ocwen's actions *after* the entry of the Order of Discharge on November 21, 2017 and *after* her counsel sent a purported QWR in October 2019. Ocwen's actions prior to the Order of Discharge are wholly irrelevant to whether or not it violated the Discharge Injunction. Moreover, Plaintiff's purported QWR only concerns alleged errors stemming from the servicing of the loan *after* Plaintiff's Chapter 13 Bankruptcy ended.

6

Accordingly, the Court should limit Topic No. 17 to a time period beginning no earlier than November 21, 2017.

***Topic No. 25.*** Topic No. 25 seeks testimony regarding "Ocwen's net worth in January of 2019." *See* Ex. C, ¶ 25. Ocwen's net worth is completely irrelevant to the issue of liability in this case. Plaintiff presumably seeks this information to use it in arguing for a particular damage award should she prevail on her claim alleging violations of the Discharge Injunction. Although the topic is irrelevant in its entirety at this stage of the litigation because Plaintiff has not proven any entitlement to relief, the time period in Topic No. 25 is nonetheless improper. Indeed, to the extent Ocwen's net worth is relevant at all, its net worth at the time Plaintiff proves entitlement to relief would be the applicable time period. As a result, the Court should limit Topic No. 25 to Ocwen's current net worth.

2. Many of Plaintiff's deposition topics, or portions thereof, have no relevance to her claims or PHH's defenses.

As explained above, Plaintiff's claims concern alleged violations of the Discharge Injunction and RESPA. With respect to the alleged violations of the Discharge Injunction, Plaintiff's claims necessarily concern conduct occurring *after* the entry of the Order of Discharge. Indeed, PHH could not have violated the Discharge Injunction *before* an Order of Discharge was entered in her Chapter 13 Bankruptcy. Similarly, Plaintiff's RESPA claim concerns the investigation and response to the purported QWR sent in October 2019. Thus, PHH could not have violated RESPA in connection with Plaintiff's purported QWR *before* it was sent. Despite these logical limits to Plaintiff's claims, she insists on seeking testimony that does not and could not have any relevance to those claims or PHH's defenses. The below topics (or portions thereof) are wholly irrelevant to Plaintiff's claims and/or PHH's defenses in this matter, and Plaintiff should be barred from seeking such testimony.

7

*Topic No. 12.* Topic No. 12 seeks (in part) testimony regarding "Ocwen's proof of claim related processes in 2012 and any changes made since . . . include[ing] how Ocwen gathered data necessary to prepare a proof of claim, how it identified and addressed objections to proofs of claim, how it identified and addressed changes required to be made to its proof of claim . . . ." *See* Ex. C, ¶ 12. However, Ocwen/PHH's proof of claim processes are not at issue in this case, and are wholly irrelevant to whether there was a violation of the Discharge Injunction. Similarly, how a proof of claim is prepared, how objections are identified and addressed, and how required changes were identified and addressed has nothing to do with whether Ocwen violated the Discharge Injunction with respect to Plaintiff. What is relevant in this case is the actions Ocwen/PHH took *after* the Order of Discharge was entered in Plaintiff's Bankruptcy. Accordingly, Topic 12 should be limited to only those portions that are relevant to Plaintiff's claims, including how or whether Ocwen's records changed as a result of the sustained objection to the proof of claim *in Plaintiff's Bankruptcy* and how Ocwen ensured compliance with the order sustaining the objection to a proof of claim *in Plaintiff's Bankruptcy*.

*Topic No. 13.* Topic No. 13 seeks (in part) testimony regarding "Ocwen's position with respect to the United States Trustee's Objection to Claim Number 8 [Filing No. 53], [and] the contents of Ocwen's relevant filings predating said Order . . ." *See* Ex. C, ¶ 13. This portion of Topic 13 is wholly irrelevant to the claims in this case. The Bankruptcy Trustee's Objection to Ocwen's Proof of Claim is not at issue or in dispute. Nor is the Order ultimately sustaining that Objection in dispute. What is at issue in this case is whether Ocwen violated the Discharge Injunction, which necessarily concerns actions *after* the Order of Discharge was entered. Thus, Topic 13 should be limited to its last clause which concerns "whether Ocwen later collected any amounts thereafter disallowed."

8

***Topic Nos. 15 & 16.*** Topic No. 15 including its fourteen (14) subparts, seeks an exorbitant amount of information regarding Ocwen's "internal processes and procedures utilized . . . in 2017 responsive to [Ocwen's] receipt of a Bankruptcy Trustee's notice of final cure payment . . . ." *See* Ex. C, ¶ 15. Topic No. 16 seeks testimony regarding "Ocwen's response to the Chapter 13 Trustee's notice of final cure . . . in Plaintiff's underlying bankruptcy . . . ." *See id*. at ¶ 16. None of this information is relevant to Plaintiff's claims in this matter. The Trustee's Notice of Final Cure Payment and Ocwen's response thereto is not at issue in this case. Both predate the entry of the Order of Discharge, and neither concern Ocwen's actions *after* the Discharge was entered. To that end, none of the information sought in Topics 15 or 16 speaks to or concerns whether Ocwen violated the Discharge Injunction. Ocwen has not argued or raised a defense claiming there was an error in the Trustee's Notice of Final Cure Payment or its response thereto. More importantly, the subparts to Topic 15 have nothing to do with *Plaintiff's Bankruptcy*. *See id*. at ¶ 15, a. through n. Even if Ocwen's response to the Notice of Final Cure in *Plaintiff's Bankruptcy* was relevant, information regarding Ocwen's handling notices of final cure in general is not. Simply put, none of the information sought concerns potential liability under Plaintiff's claims, or even the level of culpability for any such violations of the Discharge Injunction. Indeed, the processes and procedures concerning a Notice of Final Cure have nothing to do with Ocwen's actions *post-discharge*. And Ocwen's response to the Notice of Final Cure is not in dispute and speaks for itself. As a result, the Court should enter a Protective Order prohibiting Plaintiff from seeking the irrelevant testimony sought in Topics 15 & 16.

***Topic No. 18.*** Topic No. 18 seeks testimony regarding "the handling of insurance proceeds with respect to the Loan . . . and Ocwen's position with respect to whether or why those proceeds were withheld." *See* Ex. C, ¶ 18. Neither of Plaintiff's claims concern alleged handling or

9

withholding of insurance proceeds. This topic is simply out of place and has not connection or relevance to the two claims in Plaintiff's Complaint. As a result, because Topic 18 is wholly irrelevant to Plaintiff's claims, she should be prohibited from seeking such testimony.

*Topic No. 19.* Topic 19 seeks "[a] discussion about any data, statistics, samples, or studies regarding how many loans or accounts serviced by Ocwen each year from 2015 to 2019 were included in a Chapter 13 bankruptcy, how many of those loan or accounts were later flagged or earmarked as being held by borrowers who received an Order of Discharge, and, of the foregoing, how many loans or accounts reflected a delinquent status within 45 days of the entry of said Order of Discharge." Ex. C, ¶ 19. This topic, on its face, has nothing to do with Plaintiff's loan or PHH's actions with respect to Plaintiff's loan after the Order of Discharge was entered. The information sought does not and could not prove liability in Plaintiff's case, and it does not provide any relevant information about whether there was a violation of the Discharge Injunction in this case. Plaintiff should be prevented from seeking this wholly irrelevant information.

*Topic Nos. 20, 21, 22, & 23.* Topics 20 through 23 all concern various aspect of agreements, consent decrees, and/or regulatory activity significantly predating Plaintiff's claims in this Adversary Proceeding. Specifically, Topic 20 concerns an "Agreement on Mortgage Servicing Practices" between Ocwen and the New York Department of Financial Services ("NYDFS"), which was the result of a settlement between Ocwen and the NYDFS concerning business practices in the State of New York. *See* Ex. C, ¶ 20. Topic 21 concerns obligations and adherence to a "National Mortgage Servicing Settlement" between Ocwen and the Consumer Financial Protection Bureau as a result of a February 2014 Consent Decree. *Id*. at ¶ 21. Topic 22 concerns the work and/or opinions of a Compliance Monitor set up by the NYDFS in connection with consent decrees entered in 2012 and 2014. *Id*. at ¶ 22. Topic 23 concerns the duties and work

10

performed by an Operations Monitor set up by the NYDFS in connection with a 2014 consent decree. *Id*. at ¶ 23. None of these topics have anything to do with Plaintiff's loan, Ocwen's servicing of Plaintiff's loan after the entry of the Order of Discharge, or Plaintiff's purported QWR. Simply put, these topics are nothing more than attempts by Plaintiff's counsel to sling mud at PHH by recounting the details of antiquated regulatory actions that significantly predate the relevant time period in this case. Plaintiff is a resident of Indiana, the property underlying this matter is located in Indiana. To that end, Topic Nos. 20, 22, and 23 – all of which concern regulatory action by the *New York* Department of Financial Services – do not and could not have anything to do with Plaintiff or her loan. More importantly, Plaintiff nor her counsel are regulators. Plaintiff has no standing to seek to enforce these consent decrees, and nothing contained therein has any bearing on whether PHH violated the Discharge Injunction in Plaintiff's Bankruptcy. Plaintiff's counsel's attempt to use alleged prior bad acts or the purportedly unfavorable opinions of regulators from several years before any relevant time period in this case is nothing more than an attempt to harass PHH. The Court should not allow it.

*Topic No. 24*. Finally, Topic No. 24 concerns risk remediation and compliance documents referred to as "Risk Convergence Reports," which were obtained through discovery over Ocwen's objection in Plaintiff's District Court case. *See* Ex. C, ¶ 24. The Risk Convergence Reports have absolutely no relevance to Plaintiff's claims or PHH's defenses in this case. Neither of Plaintiff's claims in this case or the defenses thereto are proven, disproven, or impacted by the information contained in Risk Convergence Reports. PHH further objects to this topic as overbroad and unduly burdensome because Plaintiff is aware that the Risk Convergence Reports do not span the timeframe implied in this topic – indeed, the Risk Convergence Reports were documents created between January 2014 and February 2016. Moreover, as Plaintiff is aware, the Risk Convergence

11

Reports contain no borrower/loan specific information. To that end, they have no relevance to Plaintiff's claims because they can provide no information regarding Ocwen's handling of Plaintiff's loan, the earliest of which could have accrued after the November 2017 Discharge Order. Moreover, even if the Risk Convergence Reports contained some relevant information, Topic No. 24 is grossly overbroad. Indeed, Topic 24 seeks testimony regarding "each bankruptcy related topic including in the Risk Convergence Reports." *Id*. But every conceivable bankruptcy related topic is not at issue in this case. Rather, Plaintiff's case concerns one aspect of a Chapter 13 Bankruptcy: post-discharge conduct. Because the Risk Convergence Reports are not relevant to Plaintiff's claims at all, she should be prevented from seeking testimony described in Topic 24. However, even if the Court were to find the Risk Convergence Reports were relevant in part, Topic 24 remains impermissibly overbroad and if not stricken, it should be significantly limited.

**B.     Plaintiff should be Barred from Seeking Legal Opinions and/or Conclusions from PHH's Corporate Representative.**

Two topics in Plaintiff's Notice of Deposition – Topic Nos. 20 and 21 – seek legal opinions and conclusions from PHH's representative that are outside the scope of PHH's corporate knowledge. These topics are impermissible under Rule 30(b)(6), and the Court should prohibit Plaintiff from seeking such testimony.

Although a plaintiff may seek *the facts* upon which one will rely to support claims or defenses through a 30(b)(6) deposition, "[s]hould Plaintiff wish to determine [PHH's] legal position. . . such inquiry is better suited as a contention interrogatory." *Schyvincht v. Menard, Inc.*, No. 18 CV 50286, 2019 WL 3002961, at *8 (N.D. Ill. July 10, 2019). Moreover, legal conclusions by designated witnesses have generally been found *not* binding on the organization which they represent. *See AstenJohnson, Inc. v. Columbia Cas. Co.*, 562 F.3d 213, 229 n.9 (3rd Cir. 2009) (citing *R & B Appliance Parts, Inc. v. Amana Co.,* 258 F.3d 783, 787 (8th Cir. 2001)).

12

In this case, Plaintiff seeks testimony regarding PHH's legal analysis and conclusions regarding the obligations set forth in and adherence to an "Agreement on Mortgage Servicing Practices" entered into with the New York Department of Financial Services in September 2011. *See* Ex. C, ¶ 20. Plaintiff also seeks testimony regarding obligations set forth in and adherence to a February 2014 Consent Decree between Ocwen and the Consumer Financial Protection Bureau ("CFPB"). *See id.* at ¶ 21. Neither of these topics have anything to do with Plaintiff's loan, PHH's actions with respect to Plaintiff's loan, or whether PHH is liable for violations of the Discharge Injunction or RESPA. Thus, Plaintiff impermissibly seeks for Ocwen to opine not on any facts relevant to this action but for legal contentions and conclusions outside the scope of Rule 30(b)(6). *Turubchuk v. E. T. Simonds Constr. Co.*, No. 3:12-CV-594-SMY-DGW, 2015 WL 5725159, at *4 (S.D. Ill. Sept. 30, 2015) (finding that various requests to admit, as to whether the defendant "was liable" to the plaintiff and the defendant's "legal responsibilities," were improper and sought legal conclusions); *Tarpoff v. United States*, No. 09-CV-00411 DRH, 2011 WL 1205731, at *4 (S.D. Ill. Mar. 10, 2011) (allowing questioning of the lay witness's corporate responsibility but barring questioning on legal responsibility). Further, even to the extent that Plaintiff may seek to improperly depose PHH's representative regarding legal conclusions and opinions, any such responses would not be binding on PHH as a matter of law. *See AstenJohnson, Inc.*, 562 F.3d at 229 n.9. Therefore, any such topics are proposed only to cause PHH undue burden, unnecessary expense in preparing for its deposition, or worse – to harass PHH by seeking meaningless testimony only meant to cast it in a negative light. As such, PHH respectfully requests that this Court enter a protective order under Rule 26(c) restricting Plaintiff from seeking testimony that calls for legal analysis and conclusions regarding the obligations set forth and adherence to agreements or decrees entered into with regulators.

13

**C.     Plaintiff should be Barred from Obtaining Testimony regarding Legally Protected and/or Privileged Information.**

In addition to being wholly irrelevant to Plaintiff's claims in this case, Topic Nos. 20 through 23 also seek testimony regarding information that is ultimately protected from disclosure by law and/or privileged. Specifically, Topics 20, 22, and 23 all concern regulatory actions and/or opinions by the NYDFS. This information is protected from discovery by New York Banking Law § 36. Additionally, Topics 20 through 23 all concern information that is privileged under the federal banking examination privilege.

1. <u>The information sought in Topic Nos. 20, 22, and 23 is protected from discovery by New York Banking Law § 36.</u>

New York Banking Law § 36 provides broad protection from disclosure for all information and documents concerning or arising from a regulatory examination or investigation:

> All reports of examinations and investigations, correspondence and memoranda concerning or arising out of such examination and investigation . . . **shall be confidential communications, shall not be subject to subpoena and shall not be made public** unless, in the judgment of the superintendent, the ends of justice and the public advantage will be subserved by the publication thereof, in which event the superintendent may publish or authorize the publication of a copy of any such report or any part thereof in such manner as may be deemed proper or unless such laws specifically authorize such disclosure.

N.Y. Banking Law § 36(10) (emphasis added).

New York courts have consistently enforced these protections from disclosure of regulatory supervisory materials. *See Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 14-cv-7126 (JMF), 2016 WL 6779901, at *5 (S.D.N.Y. Nov. 16, 2016) (denying motion to compel production of documents, apply N.Y. Banking Law § 36(10) because "New York Banking Law protects DFS materials from disclosure."); *Clark v. Flynn*, 9 A.D.2d 249, 252 (N.Y. App. Div. 1959) (holding that letter from Superintendent to examined bank regarding the Department's report and recommendation fell within the scope of documents subject to the New York banking

14

privilege); *see also Matter of Estate of Saxon*, 176 Misc. 2d 724, 727, 673 N.Y.S.2d 625 (N.Y. Sur. 1998) ("witness by law [was] prohibited from revealing any aspect of the bank examiner reports conducted by the Superintendent."). The first type of document prohibited by the New York law is "reports of examinations and investigations." *See* N.Y. Banking Law § 36(10).

Topics 20, 22, and 23 all explicitly concerns information related to the NYDFS' regulatory actions and examination of Ocwen. This type of information is explicitly protected from disclosure. *See id*. It follows that the contents of these regulatory examinations and investigations would be similarly protected from disclosure in the context of a deposition. As a result, Plaintiff should be prevented from seeking testimony regarding information protected from disclosure by New York Banking Law § 36.

    2.    <u>The information sought by Plaintiff in Topics 20 through 23 is protected from disclosure under the federal bank examiner privilege</u>.

"[F]ederal courts 'have long recognized that the report of a bank examiner is protected by a qualified privilege.'" *Rouson ex rel. Estate of Rouson v. Eicoff*, No. 04-CV-2734 ARR KAM, 2006 WL 2927161 (E.D.N.Y. Oct. 11, 2006) (citing *In re Subpoena Served upon Comptroller of Currency*, 967 F.2d 630, 633 (D.C. Cir. 1992)); *In re Franklin Nat'l Bank Sec. Litig.*, 478 F. Supp. 577, 580-82 (E.D.N.Y. 1979). This privilege, often referred to as the bank examination privilege, "is firmly rooted in practical necessity," *In re Subpoena Served on Comptroller*, 967 F.2d at 633, and is "'designed to promote the effective functioning of an agency by allowing the agency and the regulated banks the opportunity to be forthright in all communications.'" *Mktg. Investors Corp. v. New Millennium Bank*, No. 3:11-cv-1696-D, 2012 WL 1357502, at *7 (N.D. Tex. Apr. 16, 2012), *report and recommendation adopted in part, rejected in part on other grounds*, No. 3:11-CV-1696-D, 2012 WL 2900606 (N.D. Tex. June 5, 2012) (citing *In re Bankers Trust Co.*, 61 F.3d 465, 471 (6th Cir. 1995)).

15

The bank examination privilege "protects communications between banks and their examiners in order to preserve absolute candor essential to the effective supervision of the banks." *Linde v. Arab Bank, PLC*, No. 04-2799, 2009 WL 3055282, at *1 (E.D.N.Y. Sept. 21, 2009) (citations omitted). The privilege specifically "covers the opinions and recommendation of bank examiners and the banks' responses to the examiners' inquiries." *Id.* (citing *Bankers Trust*, 61 F.3d at 471; *In re Subpoena Served on Comptroller*, 967 F.2d at 633-34; *Bank of China v. St. Paul Mercury Ins. Co.*, No. 03-9797, 2004 WL 2624673, at *4 (S.D.N.Y. Nov. 18, 2004)); *See also Rouson*, 2006 WL 2927161 at *4 (citing *Franklin Nat'l Bank*, 478 F. Supp. at 581). Moreover, "[c]ourts have justified the privilege because of the distinctively continuous and informal process of bank regulation, which especially requires candor from regulated entities." *FHFA v. JPMorgan Chase & Co.*, 978 F. Supp. 2d 267, 273 (S.D.N.Y. 2013) (citations omitted). Indeed, the court in *JPMorgan Chase* stated:

> Bank safety and soundness supervision is an iterative process of comment by the regulators and response by the bank. The success of the supervision therefore depends vitally upon the quality of communication between the regulated banking firm and the bank regulatory agency. This relationship is both extensive and informal . . . in the sense that it calls for adjustment, not adjudication . . . These conditions simply could not be met as well if communications between the bank and its regulators were not privileged.

*Id.* (quoting *In re Subpoena*, 967 F.2d at 633).

The testimony sought in Topics 20 through 23 directly implicates the bank examiner privilege because it seeks information regarding Ocwen's communications and actions related to regulatory investigations, as well as the opinions/findings of the regulators themselves. Again, this information has nothing to do with Plaintiff's loan or Ocwen/PHH's actions following the Order of Discharge in Plaintiff's Bankruptcy. Indeed, all of these regulatory actions and consent decrees predate Plaintiff's discharge by at least three years. The purpose of the bank examiner

16

privilege is to prevent the exact type of conduct that Plaintiff is engaged in: seeking to use information regarding regulatory actions to cast the subject of those actions in a bad light despite no causal or factual connection between the claims in Plaintiff's case and those regulatory actions. The Court should not indulge Plaintiff's attempts.

**D.    Plaintiff should be Barred from Obtaining Testimony regarding Topics related to Ocwen Financial Corporation, whose Deposition has not been Noticed.**

Topics 26 and 27 in Plaintiff's Notice of Deposition specifically ask for information regarding co-defendant Ocwen Financial Corporation – a distinct entity from PHH – despite the fact that Ocwen Financial Corporation's deposition has not been noticed. Aside from the fact that the information sought is irrelevant, particularly at this stage of the proceeding, and publicly available to Plaintiff, seeking the information from PHH is improper where Plaintiff could and should have noticed the deposition of the subject of the information sought.

As a result, because Plaintiff improperly seeks testimony regarding Ocwen Financial Corporation from PHH rather than Ocwen Financial Corporation itself, the topic is improper and the Court should prohibit Plaintiff from seeking such testimony from PHH.

## V.    CONCLUSION

For the reasons stated above, PHH respectfully requests the Court grant this Motion, enter a Protective order preventing Plaintiff from seeking testimony regarding the improper topics described above, and for any further relief the Court deems just.

Dated: July 1, 2022                                Respectfully submitted,

                                                                By: */s/ Ethan G. Ostroff*

                                                                Ethan G. Ostroff
                                                                Carter R. Nichols
                                                                TROUTMAN PEPPER HAMILTON SANDERS LLP

17

222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23454
Telephone: (757) 687-7500
E-mail: ethan.ostroff@troutman.com
E-mail: carter.nichols@troutman.com

*Counsel for Defendants PHH Mortgage Corporation and Ocwen Financial Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 1st day of July, 2022, a true and accurate copy of the foregoing *Memorandum in Support of Motion for Protective Order* was filed with the Clerk of Court via CM/ECF, which will distribute a notice and copy to all counsel of record.

By: */s/ Ethan G. Ostroff*

Ethan G. Ostroff
Carter R. Nichols
TROUTMAN PEPPER HAMILTON SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23454
Telephone: (757) 687-7500
E-mail: ethan.ostroff@troutman.com
E-mail: carter.nichols@troutman.com

*Counsel for Defendants PHH Mortgage Corporation and Ocwen Financial Corporation*